[No. 23140.   Department One.   October 14, 1931.]

GREAT WESTERN THEATRE EQUIPMENT, INCORPORATED, *Appellant*, v. M. & E. THEATRES, INCORPORATED, *et al., Respondents.*[1]

*Frank S. Griffith,* for appellant.

*W. H. Abel* and *O. M. Nelson,* for respondents.

HERMAN, J.—This action was based upon three causes of action, on the second and third of which judgment was confessed. The facts involved in the first cause of action are as follows:

Plaintiff sold to G. W. Armour and installed in his theatre at Montesano a device called Masterphone sound equipment. This device was sold on a conditional sales contract, two hundred fifty dollars being

[1]Reported in 3 P. (2d) 1003.

paid on the purchase price at the time the conditional sales contract was entered into. About one month later, G. W. Armour died, leaving a non-intervention will by the terms of which his widow, Eva L. Armour, succeeded to all his rights in the device under the terms of the conditional bill of sale.

October 15, 1929, W. P. Armour, son of G. W. Armour, the original purchaser of the equipment, and Eva L. Armour, together with O. M. Nelson, formed a corporation known as M. & E. Theatres, Inc. (which corporation will hereinafter be referred to as though it were the sole defendant), W. P. Armour becoming president and O. M. Nelson, secretary thereof. On the same day, M. & E. Theatres, Inc., purchased from Eva L. Armour the Montesano theatre, in which was installed the device sold by plaintiff. The bill of sale from Eva L. Armour to M. & E. Theatres, Inc., contains the following provision:

"The above property is subject to a sales contract for certain equipment as shown by the records of the county auditor of Grays Harbor county, Washington."

It contains no express agreement by M. & E. Theatres, Inc., to assume the obligations or make the payments under the terms of the conditional sales contract.

September 5, 1929, prior to the sale of the Montesano theatre to M. & E. Theatres, Inc., Sound Industrial Loan Company, the holder under an assignment from the plaintiff of the conditional sales contract covering the device, mailed to Mr. O. M. Nelson, secretary of M. & E. Theatres, Inc., who was also attorney for the estate of G. W. Armour, a letter enclosing a creditor's claim, verified by the treasurer of Sound Industrial Loan Company. This letter contained the following paragraph:

"We see no reason, Mr. Nelson, why we should wait for our money as outlined in your letter of August 29, if the Armour estate has money at this time with which to pay it. However, we present our claim herein and would thank you to handle the payment out of it in the best possible shape."

March 4, 1930, subsequent to the service of that claim upon the attorney for the estate of G. W. Armour, the plaintiff repurchased from Sound Industrial Loan Company the contract of conditional sale. During the month of April, 1930, defendant entered into negotiations with a Mr. Graham for the purchase of the Montesano theatre. Mr. Graham thereafter sold the theatre to yet another party. In the meantime, the equipment covered by the conditional sales contract has disappeared.

For a period of approximately six months, defendant remained in possession of the device, when the theatre, together with defendant's interest, if any, in the property covered by the conditional sales contract, was sold. While defendant had possession of the device, it paid plaintiff eight hundred dollars in cash, and one hundred fifty dollars by the return of property. The testimony of defendant's secretary about these payments was in part as follows:

"A. Well, we made certain payments on it, but there was nothing said about continuing payments. We made certain payments. Q. They were part of the purchase price of the goods? A. Part of the purchase price of the goods."

During the time the device was in possession of the defendant, a fire insurance policy was issued to defendant, with a rider attached making loss, if any, payable to the plaintiff as its interest might appear.

The lower court found that M. & E. Theatres, Inc., did not orally or in writing assume or agree to pay

the balance due on the conditional sales contract, but took the equities of the Armour estate subject to the then existing contract between the plaintiff and G. W. Armour. From a judgment for defendant entered on the first cause of action, plaintiff appeals.

The principal question in this case is whether respondent assumed the obligations of the conditional sales contract. We think that the testimony justified the lower court in finding "that the said M. & E. Theatres, Inc., did not orally or in writing assume or agree to pay the balance due on said contract."

We need not depend alone upon the oral or written statements of respondent to determine whether it assumed the contract. Addison on Contracts (8th ed.), Vol. 1, p. 54, correctly states:

"The intention of the parties to any particular transaction may, however, be gathered from their acts and deeds, in connection with the surrounding circumstances, as well as from their words; and the law therefore implies, from the silent language of men's conduct and actions, contracts and promises as forcible and binding as those that are made by express words or through the medium of written memorials."

The testimony of respondent's secretary that the payments made by respondent were "part of the purchase price of the goods" would not indicate that the sole purpose on the part of respondent in making the payments was to keep possession of the goods. Respondent paid substantial sums of money to appellant as "part of the purchase price of the goods," and remained in possession and made use of the device for approximately six months. It also procured fire insurance on the property in question. All these things were done with knowledge of the contract of conditional sale between appellant and G. W. Armour, from whose widow respondent purchased the theatre containing the device.

Having in mind the rule of law set forth in the foregoing quotation from Addison on Contracts, after careful consideration of all the facts, we reach the conclusion that there was an implied contract for respondent to assume the obligations of the conditional sales contract under which the device was sold.

Further confirmation of our view that the lower court erred in holding there was no assumption of the obligations of the conditional sales contract on the part of the respondent is found by consideration of the principle enunciated by the supreme court of the United States in the case of *Wiggins Ferry Co. v. Ohio & Mississippi R. Co.,* 142 U. S. 396, 35 L. Ed. 1055:

"It is not necessary that a party should deliberately agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conduct himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations. 2 Pom. Eq. Juris., sec. 965; *Chicago & A. R. Co. v. Chicago V. & W. Coal Co.,* 79 Ill. 121."

Respondent maintains that when, September 5, 1929, Sound Industrial Loan Company, the appellant's successor and predecessor in interest, served on the personal representative of G. W. Armour a claim for the amount due under the conditional sales contract, such action was an election of remedies which would bar appellant from proceeding against respondent, who acquired its interest in the device during the month of October, 1929.

Respondent cites, in support of its contention, *Kimble Motor Car Co. v. Androw,* 125 Wash. 225, 215 Pac. 340. In that case, the appellant sold an auto-

mobile to respondent and wife, the automobile being placed in the possession of the wife, who subsequently died. The respondent held the car as administrator of his deceased wife's estate. Appellant filed with the administrator a claim for seven hundred fifty dollars and interest due under the terms of the contract, which claim was duly allowed, approved and filed in the superior court. Suit was then instituted to recover the automobile. This court held that appellant, when he filed his claim, commenced a proceeding in court and elected to pursue the course of attempting to collect the purchase price. Having thus declared the debt due, it followed that appellant admitted the consummation of the sale, and, having admitted the consummation of the sale, appellant could not demand the return of the car.

In the case at bar, appellant sued to recover from respondent the purchase price of the device, respondent being the successor in interest to the estate of G. W. Armour, and in such action there was nothing inconsistent with the filing of the claim against the estate of G. W. Armour.

For the reasons above stated, the judgment of the lower court is reversed, with instructions to enter judgment on the first cause of action in accordance herewith.

TOLMAN, C. J., BEELER, PARKER, and MITCHELL, JJ., concur.

## ON REHEARING.

[*En Banc.* February 8, 1932.]

PER CURIAM.—Upon a rehearing *En Banc*, a majority of the court adheres to the Departmental opinion heretofore filed herein.

Judgment reversed.